IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

NOV 2 8 2003

Michael N. Milby
Clerk of Court

| | |
|---|---|
| MICHAEL RICHARD TELLEZ<br>and JENNIFER ANN TELLEZ,<br>REBECCA GARZA, RUBEN<br>SANTILLANA and MINERVA<br>SANTILLANA, GUILLERMO<br>CONTRERAS and OLGA<br>CONTRERAS, ELUTERIO<br>MORALES and ROSA MORALES,<br>and NORA GARCIA<br><br>VS.<br><br>ALLSTATE TEXAS LLOYD'S,<br>A LLOYD'S COMPANY | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

CIVIL ACTION NO. B - 0 3 - 2 1 8

## PLAINTIFFS' COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, Plaintiffs MICHAEL RICHARD TELLEZ and JENNIFER ANN TELLEZ, REBECCA GARZA, RUBEN SANTILLANA and MINERVA SANTILLANA, GUILLERMO CONTRERAS and OLGA CONTRERAS, ELUTERIO MORALES and ROSA MORALES, and NORA GARCIA, (hereinafter sometimes collectively referred to as "Plaintiffs"), and for cause of action against the Defendant, ALLSTATE TEXAS LLOYD'S, A LLOYD'S COMPANY (hereinafter sometimes referred to as "ALLSTATE" or "Defendant"), would respectfully show this Court as follows:

## PARTIES

1.     MICHAEL RICHARD TELLEZ and JENNIFER ANN TELLEZ are residents

1

of Cameron County, Texas.

REBECCA GARZA is a resident of Hidalgo County, Texas.

RUBEN SANTILLANA and MINERVA SANTILLANA are residents of Hidalgo County, Texas.

GUILLERMO CONTRERAS and OLGA CONTRERAS are residents of Hidalgo County, Texas.

ELUTERIO MORALES and ROSA MORALES are residents of Hidalgo County, Texas.

NORA GARCIA is a resident of Hidalgo County, Texas.

2.     The Defendant is a corporation incorporated under the laws of Illinois, authorized to engage in the business of insurance in the State of Texas, and may be served with process pursuant to Art.1.36 of the Texas Insurance Code by serving its registered agent, C.T. Corporation System, 350 North St. Paul Street, Dallas, Texas, 75201-7127.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over this lawsuit under 28 U.S.C., Section 1332(a)(1) because the Plaintiffs and Defendant are citizens of different states and the amount in controversy with respect to each Plaintiff exceeds $75,000.00, exclusive of interest and costs.

## CONDITIONS PRECEDENT

4.     All conditions precedent have been performed or have occurred.

## JOINDER

5.     Joinder of all Plaintiffs is appropriate under FRCP 20(a) as each asserts the right to relief in respect to or arising out of the same transaction, occurrence or series of

transactions or occurrences.  Further, there are questions of law and fact common to all Plaintiffs that will arise in this action.

## FACTS

6.    The homes of all the Plaintiffs herein were covered by a standard Texas Homeowners Policy Form - B policy issued by the Defendant.  Pursuant to state law, these "all-risks" policies have identical provisions with respect to the obligations of both the Plaintiffs as insureds and Defendant as insurer.  All of the Plaintiffs' claims herein concern claims made as a result of water intrusions and resultant damage to their homes.  In each instance, Defendant violated the terms of these policies and the laws of Texas in the manner in which they investigated and considered payment of such claims, all as set forth herein.  Such illegal conduct by the Defendant was in furtherance of a corporate policy that had as its aim to minimize or eliminate its obligation to pay claims made under the subject policies.  With respect to the Plaintiffs herein, ALLSTATE adopted a systematic approach to the consideration of water intrusion claims brought by homeowners under the Texas Homeowners Policy-Form B.  To avoid or minimize the payment of claims rightfully made under such policies, ALLSTATE employed the following tactics:

A.    Intentionally refusing to accept coverage on claims clearly addressed and covered by the subject policy and for which they are estopped to deny coverage;

3

B.    Refusing to open a separate claim on each covered loss in an attempt to avoid "stacking" of the policy limits;

C.    Intentionally delaying the investigation and payment of claims, and alternate living expenses due under the policy to coerce the homeowners to accept less than the amount necessary to remediate the home;

D.    Ignoring valid estimates from recognized and qualified experts for remediation of the home when such estimates are greater than the amounts contained in ALLSTATE'S estimates; and

E.    Suspending alternate living payments when the homeowners refuse to relent under the coercive conduct referenced above.

## 7.    MICHAEL RICHARD TELLEZ and JENNIFER ANN TELLEZ

On or about January 16, 2001, the TELLEZ family filed a claim with ALLSTATE concerning damage to their home caused by water intrusion. After testing, it was discovered that the TELLEZ family residence also had a mold infestation. Despite being provided copies of expert reports showing extensive water and mold damage throughout the house, together with estimates for remediation and build-back, ALLSTATE failed and refused and continues to fail and refuse to reasonably settle the claim in violation of known contractual rights of the TELLEZ family, Art. 21.21 of the Texas Insurance Code and provisions of Section 17.46 of the Texas Business and Commerce Code as further alleged in the body of this Complaint.

During the relevant time period, ALLSTATE was advised that the TELLEZ family had experienced multiple water leaks in copper hot and cold water lines in various areas of the house including over the master bedroom, over the children's bathroom and over the kitchen. These water leaks were reported by the TELLEZ family immediately when first discovered. Although ALLSTATE was advised of the

4

multiple water intrusions, ALLSTATE insisted that only three (3) claims be opened, an amount less than the number of water intrusions actually discovered within the home and shown to the ALLSTATE adjuster. In addition, ALLSTATE refused to tender sufficient funds to perform the necessary remediation and repair of the property. As a result, the TELLEZ family was required to borrow money from a bank secured by a second mortgage on the home. These funds were then utilized to begin the necessary repairs. However, as the work was begun, additional damage was discovered behind the walls where numerous leaks had occurred. This damage was reported to ALLSTATE which took no action despite the fact both the water intrusion and the damage caused thereby was a covered loss under the policy.

In May of 2001, C. Brock Thomas, an independent contractor, was hired by the TELLEZ family. He advised the TELLEZ family to move out of the home immediately due to the health risks presented by the existence of toxic mold in the home.

On July 16, 2001, ALLSTATE received a report from Rimkus, an independent expert hired by ALLSTATE, indicating that toxic mold had been detected in the home. An additional report authored by Mike Krismer, an independent mold expert, was forwarded to ALLSTATE by the TELLEZ family further confirming the extensive mold damage throughout the house. Although ALLSTATE was clearly aware of the mold problem, nothing whatsoever was done by ALLSTATE to assist in the repair of their home although ALLSTATE had a contractual obligation to timely and reasonably adjust this covered loss. On July 30, 2002, an additional report by Rick Guerra-Prats & Companies, an independent contractor, identified the mold in detail and was sent to ALLSTATE. This too was ignored.

On or about May of 2002, alternate living expenses which had been sent by ALLSTATE to the TELLEZ family as required under the policy were suspended when the TELLEZ family refused to compromise the claims under the policy. Such action was taken even though ALLSTATE was well aware that the TELLEZ family could not move back into the home for health reasons due to the presence of toxic mold. The TELLEZ family was left to support itself outside of the home while still having the obligation to pay monthly mortgage charges and further extending their credit card and other debts. The punitive action taken by ALLSTATE in suspending needed alternate living expenses in violation of known contractual rights was clearly intended to force the TELLEZ family into a position to accept a settlement of the claim inadequate to accomplish remediation of the home. On October 29, 2002, a remediation and build back estimate from C. Brock Thomas was sent to ALLSTATE without response. Again, on April 10, 2003, a report by Rick Guerra-Prats & Companies for remediation and build back was sent to ALLSTATE without response.

Finally, on July 17, 2003 a letter was sent to ALLSTATE reciting various violations of the Deceptive Trade Practices and Consumer Protection Act together with a demand for settlement. After months of being ignored by ALLSTATE the TELLEZ family was forced to bring this action. ALLSTATE still refuses to honor its contractual obligations to remediate and repair the home. In an attempt to coerce the TELLEZ family to accept less that that to which they are legally entitled under their policy, ALLSTATE has taken affirmative, punitive action by suspending contractually required alternate living expenses intentionally placing the TELLEZ family in the compromised position in which they remain today.

6

### 8. REBECCA GARZA

On or about October 2, 2001, REBECCA GARZA filed a claim with ALLSTATE concerning damage to her home caused by water intrusions. After testing, it was discovered that REBECCA GARZA's residence also had mold infestation. Despite being provided copies of expert reports showing extensive water and mold damage throughout the house, together with estimates for remediation and build back, ALLSTATE failed and refused and continues to fail and refuse to reasonably settle the claim in violation of the known contractual rights of REBECCA GARZA, Art. 21.21 of the Texas Insurance Code and provisions of Section 17.46 of the Texas Business and Commerce Code as further alleged in the body of this Complaint.

During the relevant period of time, ALLSTATE was advised that the REBECCA GARZA residence had experienced multiple water leaks in various areas of the home including the kitchen, underneath the sink in the base of the water closet in the bathroom, the hallway wall backing, the air conditioning closet and decking, the walls back in the air conditioning closet and the utility room. These water intrusions were reported by REBECCA GARZA immediately when first discovered. Although ALLSTATE was advised of multiple water intrusions throughout the home, ALLSTATE insisted that only one claim would be opened. On July 25, 2002, Guerra-Prats & Companies, an independent contractor inspected the REBECCA GARZA residence and found multiple areas of water damage and mold. REBECCA GARZA was advised to move out of the home due to the health risks presented by the existence of toxic mold in the home. In addition, ALLSTATE was advised as recently as June 23, 2003, of a substantial risk affecting the health of Ms. Garza's daughter living with

her, Oralia Garza. Oralia Garza is a candidate for a liver transplant. One of her physicians, Dr. Pramod Mistry at Yale School of Medicine has insisted that the environment of toxic mold posses a risk that is "life-threatening". In addition, another of her physicians, Dr. Juan Guerrero at the University of Texas Health Science Center in San Antonio, has requested that the mold be removed from the GARZA home. ALLSTATE adjusters made visits to the home and ALLSTATE was well aware of the presence of toxic mold. Yet ALLSTATE refused and continues to fail and refuse to provide needed and contractually required alternate living expenses to extricate her from the toxic mold environment. In addition, ALLSTATE refused to tender sufficient funds to perform necessary remediation and repair of the home.

On November 22, 2002, ALLSTATE was sent a report by Rick Guerra-Prats & Companies indicating in detail the areas and extent of water damage and toxic mold within the REBECCA GARZA residence. This report was ignored by ALLSTATE. On July 9, 2003, ALLSTATE was sent a detailed estimate for remediation, clearance and build back by Aaron's Environmental Services, experts in the field of mold remediation, together with a letter reciting various violations of the Deceptive Trade Practices and Consumer Protection Act and demand for settlement. After months of being ignored, and completely frustrated by the intransigence of ALLSTATE, and with the mold infestation progressing in REBECCA GARZA's home, she was forced to bring this action. ALLSTATE was well aware of the mold problem as early as October 2001. Yet, at the initiation of this lawsuit, more than two years later, ALLSTATE still refuses to honor its contractual obligations to remediate and repair the home. In an attempt to coerce Ms. Garza to accept less for her claims than that to which she is entitled under her policy, ALLSTATE has failed and refused to comply

8

with its contractual obligations to provide alternate living expenses to extricate REBECCA GARZA and her family from a toxic mold environment in violation of its known contractual duties.

9.    **RUBEN SANTILLANA and MINERVA SANTILLANA**

On or about January 28, 2002, the SANTILLANA family filed a claim with ALLSTATE concerning damage to their home caused by water intrusions.  After testing, it was discovered that the SANTILLANA family residence also had mold infestation.  Despite being provided copies of expert reports showing extensive water and mold damage throughout the house, together with estimates for remediation and build back, ALLSTATE failed and refused and continues to fail and refuse to reasonably settle the claim in violation of known contractual rights of the SANTILLANA family, Art. 21.21 of the Texas Insurance Code and provisions of the Section 17.46 of the Texas Business and Commerce Code as further alleged in the body of this Complaint.

During the relevant period of time, ALLSTATE was advised that the SANTILLANA family had experienced water leaks underneath the sink area in the kitchen and water leaks in the bathroom under the sink, water closet and tub, as well as leaks between the walls and ceiling, with the presence of mold.  A second letter also dated April 3, 2002, sent to ALLSTATE requested emergency payment under the alternative living expenses coverage of the SANTILLANA policy in order to allow the family to leave the home for health purposes.  This request was refused by responding letter from the ALLSTATE adjuster of April 10, 2002, even though ALLSTATE was aware and had been provided an expert report indicating the family was living in a toxic mold environment.  Such refusal was intended to coerce the SANTILLANA

9

family to accept less for their claims than that to which they were legally entitled under their policy. On July 9, 2003, a letter was sent to ALLSTATE reciting various violations of the Deceptive Trade Practices and Consumer Protection Act together with a demand for settlement and copy of estimate from Aaron's Environmental Services, indicating the need and cost for remediation, testing and build back. By letter of August 13, 2003, in response to the Aaron's Environmental report and demand letter of July 9, 2003, ALLSTATE declined payment. Left with no alternative, the SANTILLANA family has instituted this litigation in order to enforce their contractual rights.

**10.    GUILLERMO CONTRERAS and OLGA CONTRERAS**

On or about May 2, 2002, the CONTRERAS family filed a claim with ALLSTATE concerning damages to their home caused by water intrusions. After testing, it was discovered that the CONTRERAS residence was also infested with mold. Despite being provided copies of expert reports showing water and mold damage throughout the house, together with estimates for remediation, testing and build back, ALLSTATE failed and refused and continues to fail and refuse to reasonably settle the claim in violation of known contractual rights of the CONTRERAS family, Art. 21.21 of the Texas Insurance Code and provisions of Section 17.46 of the Texas Business and Commerce Code as further alleged in the body of this Complaint.

During the relevant period of time, ALLSTATE was advised that the CONTRERAS family had experienced water leaks in the hall bathroom causing flooding into the kitchen, pantry, living room, entry closet, master bedroom, master bathroom and hallway, as well as the air conditioning in the attic. Although

ALLSTATE was advised of multiple water intrusions throughout the CONTRERAS home, ALLSTATE insisted on opening only two claims, an amount less than the intrusions actually discovered within the home.

On April 15, 2002, Rick Guerra-Prats & Companies was hired by the CONTRERAS family. They advised the family to move out of their home as a result of the heath risks presented by the existence of toxic mold in the home. A report from Rick Guerra-Prats & Companies, setting forth in detail the damage, was sent to ALLSTATE on May 2, 2002. The report recites health issues secondary to microbial contamination throughout the home and advises that the CONTRERAS family should be relocated out of the potentially dangerous environment until a thorough indoor air quality investigation could be implemented and the findings rendered. Despite being placed on notice of these health issues, ALLSTATE failed and refused and continues to fail and refuse to provide alternate living allowance to extricate the CONTRERAS family from the mold infested environment, even though ALLSTATE has a contractual obligation to do so.

On July 9, 2003, ALLSTATE was sent a letter reciting various violations of the Deceptive Trade Practices and Consumer Protection Act together with demand for settlement and an extensive report from Aaron's Environmental Services, a mold remediation company, for the cost of remediation, testing and build back, without response.

After months of being ignored by ALLSTATE, the CONTRERAS family, was forced to bring this action. Although ALLSTATE has been well aware since May, 2002 that the family was living in an environment infested with toxic mold, ALLSTATE has failed and refused to take any action whatsoever to protect the health

11

and safety of the CONTRERAS family by providing needed alternative living benefits nor to fairly adjust the underlying claim. Such conduct was intended to coerce the CONTRERAS family to accept less for their claims than that to which they are legally entitled under their policy.

**11.    ELUTERIO MORALES and ROSA MORALES**

On or about May 9, 2002, the MORALES family filed a claim with ALLSTATE concerning damage to their home caused by water intrusions. ALLSTATE's own investigation at the time revealed extensive water damage to the utility room, ceiling, HVAC water closet, master bathroom, master bedroom, upstairs bedroom ceiling, HVAC closet upstairs and sink cabinet damage in the upstairs bath. ELUTERIO MORALES was advised by the technicians sent by ALLSTATE to investigate the claim that mold had developed in his home secondary to water intrusion. Nonetheless, at a time when the MORALES family was unrepresented, ALLSTATE refused to acknowledge the presence of mold and attempted to exert its economic power over the MORALES family to settle the claim for an amount insufficient to remediate the damage. The MORALES family was unable to find a responsible contractor who would even commence, let alone accomplish the job of remediation and repair of the home for the amount offered by ALLSTATE. Despite being provided copies of expert reports showing extensive water and mold damage throughout the house, together with estimates for remediation and build back, ALLSTATE failed and refused and continues to fail and refuse to reasonably settle the claim in violation of known contractual rights of the MORALES family, Art. 21.21 of the Texas Insurance Code and provisions of Section 17.46 of the Texas Business and Commerce Code as further alleged in the body of this Complaint. Further, in spite of reports showing the presence

of toxic mold, ALLSTATE has refused to pay alternate living expenses as it is contractually obligated to do in order to extract the MORALES family from the toxic environment of their home.

During the relevant period of time, ALLSTATE was advised that the MORALES family had experienced multiple water intrusions resulting in mold, all of which was confirmed by their own investigation. These water leaks were reported to ALLSTATE immediately when first discovered. Although ALLSTATE was advised of multiple water intrusions, ALLSTATE insisted on only opening one claim, an amount less that the number of water intrusions actually discovered in the home and shown to the ALLSTATE adjuster.

On July 25, 2002, a report by Rick Guerra-Prats & Companies, an independent contractor, established the presence of mold resulting from multiple water leaks throughout the home. On July 10, 2003, a letter was sent to ALLSTATE reciting various violations of the Deceptive Trade Practices and Consumer Protection Act together with a demand for settlement and copy of an estimate from Aaron's Environmental Services, indicating the need and cost for remediation, testing and build back. By letter of August 13, 2003, a response to the Aaron's Environmental Services' report and demand letter of July 10, 2003, ALLSTATE declined payment. Left with no alternative, the MORALES family has instituted this litigation in order to enforce their contractual rights.

## 12.   NORA GARCIA

On or about January 5, 2002, NORA GARCIA filed a claim with ALLSTATE concerning damage to her home caused by water intrusions. After testing, it was discovered that the GARCIA residence was also infested with mold. Despite being

provided copies of experts reports, showing extensive water and mold damage throughout the house, together with estimates for remediation and build back, ALLSTATE failed and refused and continues to fail and refuse to reasonably settle the claim in violation of known contractual rights of NORA GARCIA, Art. 21.21 of the Texas Insurance Code and provisions of Section 17.46 of the Texas Business and Commerce Code as further alleged in the body of this Complaint.

During the relevant period of time, ALLSTATE was advised that NORA GARCIA had experienced multiple water intrusions in various areas of her home, including the air conditioning closet, decking, walls and framing under the unit, the air conditioning wall backing and damage to the floor of the air conditioning closet, multiple leaks in the bathroom and behind the water closet in the ceiling above the tub area, multiple leaks in the kitchen and under the sink area and front exterior of the sink cabinets and several leaks in the second bathroom under the sink area, flooring, cabinet, vanity, wall and water closet with the presence of mold. Although ALLSTATE was advised of multiple water intrusions throughout the home, ALLSTATE insisted on opening only one claim for all of these water intrusions.

On September 23, 2002, Guerra-Prats & Companies issued a detailed report showing multiple water intrusions within the GARCIA home and the resulting damage, including the presence of mold. Prior thereto on December 20, 2001, ALLSTATE had received its own report from Home Test, a company from Waldorf, Maryland, warning ALLSTATE that there were dangerous levels of toxic mold within the GARCIA home. Despite such warnings, ALLSTATE withheld and continues to refuse to provide needed alternate living expenses to NORA GARCIA and her family. NORA GARCIA has been living out of the home for over a year and a half at her own expense. She

14

continues to make mortgage payments for her home in McAllen as well as rent, utilities and other expenses associated with being out of the home, which expenses should be paid by ALLSTATE. NORA GARCIA has incurred credit card debt and is living under oppressive stress, intentionally imposed by ALLSTATE in blatantly refusing to make alternative living expenses payments which ALLSTATE is contractually obligated to provide. In an effort to coerce NORA GARCIA to accept less for her claims than that to which she is legally entitled under her policy, ALLSTATE has refused to properly consider her claims.

On July 17, 2003, a letter was sent to ALLSTATE reciting various violations of the Deceptive Trade Practices and Consumer Protection Act together with a demand for settlement and estimate for remediation, clearance and build back of the NORA GARCIA home. ALLSTATE has been provided all estimates and expert reports showing the necessity and cost for remediation, build back and needed living allowances while out of the home. ALLSTATE's own air quality testing conducted by Home Test demonstrates that ALLSTATE was aware as early as December 20, 2001, that NORA GARCIA and her family were living in a toxic and unhealthy mold environment. Yet ALLSTATE has done nothing to comply with its contractual obligations with NORA GARCIA. After months of being ignored by ALLSTATE, NORA GARCIA was forced to bring this action.

## VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT AND TEXAS INSURANCE CODE

**13.**    The conduct of ALLSTATE set forth herein constitutes violations of the Texas Deceptive Trade Practices and Consumer Protection Act ("DTPA") and Article 21.21 of the Texas Insurance Code. Plaintiffs obtained and/or purchased from ALLSTATE

15

goods or services in the form of insurance on their residence and the contents therein. Plaintiffs were consumers in making said purchases and/or otherwise obtaining such goods and services, and relied upon ALLSTATE in acquiring such goods or services.

Among the specifically enumerated "laundry list" of violations, ALLSTATE violated Secs. 17.46 (b)(5), (7), (9), and (12), Tex. Bus. & Com. Code, by their acts, omissions, and false representations summarized herein. ALLSTATE engaged in unconscionable and punitive action and in bad faith and in known violation of contractual obligations and rights or course of action as defined in Sec. 17.45(5), Tex. Bus. & Com. Code, and made actionable through Sec. 17.50(a)(3), Tex. Bus. & Com. Code. Plaintiffs' damages are a result of the wrongful acts and omissions of ALLSTATE and misrepresentations related to the goods and services procured from ALLSTATE by the Plaintiffs.

The referenced wrongful acts and omissions of ALLSTATE summarized hereinabove also constitute violations of Article 21.21, Sec. 4(1), (2), (10) and (11), and Article 21.21-2, Section 2(a) and (b) (1), (2), (3), (4) and (5) of the Texas Insurance Code. Defendants' violations include:

A.   Knowingly misrepresenting to the Plaintiffs pertinent facts or policy provisions relating to coverages at issue;

B.   Failing to acknowledge with reasonable promptness pertinent communications with respect to Plaintiffs' claims;

C.   Not attempting in good faith to effectuate prompt, fair, and equitable settlement of Plaintiffs' claims when liability had become reasonably clear;

D.   Failing to promptly give the Plaintiffs a reasonable explanation for the denial of the claim;

16

E.  Refusing to pay a claim without conducting a reasonable investigation; and

F.  Misrepresenting Plaintiffs' insurance policy and their rights and obligations contained therein.

14.  Such violations of the Texas Insurance Code are also actionable under Sec. 17.50(a)(4) of the DTPA. Plaintiffs have been compelled to engage the services of attorneys.  Plaintiffs are, therefore, entitled to recover a reasonable sum for the necessary services of Plaintiffs' attorneys in the preparation and trial of this action, including any appeals to the Court of Appeals or the Supreme Court of Texas.

15.  Plaintiffs further allege that Defendants knowingly and/or intentionally committed the acts complained of and seek not more than three times the amount of actual damages and/or economic damages.

## OTHER INSURANCE CODE VIOLATIONS

16.  The conduct of ALLSTATE summarized hereinabove also constitutes violations of Article 21.55, Sec. 2, 3, and 6 of the Texas Insurance Code.  Plaintiffs are entitled to recover from ALLSTATE the additional sum of 18 percent per year of the amount payable under the policy, as well as attorneys' fees and other damages as authorized by Article 21.55, Sec. 6.

## BREACH OF FIDUCIARY DUTY AND DUTY OF GOOD FAITH AND FAIR DEALING

17.  Plaintiffs are persons entitled to make a direct claim under the terms of the policy issued by ALLSTATE.  The claims submitted by Plaintiffs for water intrusions and resultant damages were covered losses under the terms of the policy issued by ALLSTATE.  As their insurer, ALLSTATE owes to the Plaintiffs herein a fiduciary duty and one of good faith and fair dealing in the manner in which it considers their

17

claims under their policies. ALLSTATE has breached that duty in the manner aforesaid. In particular, ALLSTATE breached these duties by refusing to open and investigate claims or to pay proper benefits and delaying payment of benefits when ALLSTATE knew or should have known that liability for such claims was reasonably clear that benefits were due under the policy, along with other acts. The conduct of ALLSTATE referenced above was intentional and constitutes a violation of its fiduciary duty and duty of good faith and fair dealing with respect to Plaintiffs' claims

**18.**    As a proximate result of the tortious conduct of ALLSTATE and its responsible adjusters, Plaintiffs were damaged in all particulars set out herein, including all elements of damage claimed below. Furthermore, the conduct of ALLSTATE was malicious and intentional so as to entitle Plaintiffs to an award of exemplary damages in an amount to be determined by the trier of fact.

## BREACH OF CONTRACT

**19.**    Despite the fact that all conditions precedent to Plaintiffs' recovery have been performed or have occurred, ALLSTATE has failed and refused to pay Plaintiffs' claims in accordance with its contractual obligations. ALLSTATE'S unjustified refusal to properly and completely adjust Plaintiffs' claims in accordance with its policy of insurance has compelled the Plaintiffs to institute this litigation. Plaintiffs are entitled to all damages resulting from ALLSTATE'S ongoing breach, including all consequential damages resulting from that breach and attorneys' fees reasonably and necessarily incurred.

## DAMAGES

**20.**    As a direct and/or producing and/or proximate result of the acts and omissions of the Defendant, ALLSTATE, the Plaintiffs have or will sustain substantial economic

damages, including but not limited to the value of their home, rental costs, the cost of Plaintiffs' personal possessions, the reasonable and necessary cost to repair, remediation and build back of the home, stigma damages representing the loss of the value of the home as a result of the presence and history of mold, diminished value of the property and other damages past, present and future. Plaintiffs seek all actual damages for their damaged and lost property, and other losses, in addition to economic damages, punitive and/or exemplary damages, including the following:

A.   Benefits payable under the insurance policy made the basis of this suit, including the total cost to remediate, remove, test for clearance of molds, and then rebuild the home and replace the contents contained therein, with like kind or quality;

B.   Statutory penalties against ALLSTATE for its failure to comply with the prompt payment provisions of Article 21.55 of the Insurance Code;

C.   Statutory penalties against ALLSTATE for the knowing and/or intentional violations of the Texas Deceptive Trade Practices Act and Articles 21.21 and 21.21-2 of the Texas Insurance Code;

D.   Consequential damages resulting from the intentional failure by ALLSTATE to abide by the known provisions of the insurance policy;

E.   Attorneys' fees;

F.   Prejudgment and post-judgment interest as provided by law;

G.   Costs of suit;

H.   Punitive and exemplary damages; and

I.   Such other and further relief to which Plaintiffs may show themselves entitled, at law or in equity.

19

WHEREFORE, MICHAEL RICHARD TELLEZ and JENNIFER ANN TELLEZ, REBECCA GARZA, RUBEN SANTILLANA and MINERVA SANTILLANA, GUILLERMO CONTRERAS and OLGA CONTRERAS, ELUTERIO MORALES and ROSA MORALES, and NORA GARCIA, Plaintiffs pray that the Defendant, ALLSTATE TEXAS LLOYD'S, A LLOYD'S COMPANY, be cited to appear and answer herein, and, upon final trial, Plaintiffs have the relief to which they have hereinabove alleged themselves entitled, and for such further additional relief as may be appropriate in the premises.

**JURY TRIAL DEMANDED.**

Respectfully submitted,

Dan Downey
Attorney in Charge
State Bar No: 06085400
Southern District of Texas Bar No. 459
700 Louisiana Street #4000
Houston, Texas
(713) 222-8080 Telephone
(713) 222-0066 Facsimile


Peter E. Ferraro
Attorney at Law
1104 San Antonio St.
Austin, Texas 78701
(512) 474-7742 Telephone
(512) 474-5306 Facsimile

20

Peter E. Ferraro
State Bar No. 06934600
Southern District of Texas Bar No.


John H. Eaton
Eaton & Associates
2208 Primrose, Bldg. D
McAllen, Texas 78504
(956) 631-9400 Telephone
(956) 687-9867 Facsimile

John H. Eaton
State Bar No: 06382500
Southern District of Texas Bar No.2208

**ATTORNEYS FOR PLAINTIFFS**