IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| MICHAEL RICHARD TELLEZ, JENNIFER ANN TELLEZ, REBECCA GARZA, RUBEN SANTILLANA, MINERVA SANTILLANA, GUILLERMO CONTRERAS, OLGA CONTRERAS, ELUTERIO MORALES, ROSA MORALES, and NORA GARCIA, § § § § § § § § § Plaintiffs, § v. § § ALLSTATE TEXAS LLOYDS § COMPANY, § § Defendant. § | CIVIL ACTION NO. B-03-218 (Jury Trial Demanded) |

United States District Court
Southern District of Texas
FILED
JAN 2 0 2004
Michael N. Milby
Clerk of Court

**DEFENDANT'S REPLY TO PLAINTIFFS' RESPONSE TO
DEFENDANT'S MOTION TO SEVER AND TRANSFER VENUE**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Defendant Allstate Texas Lloyds Company ("Allstate") files this reply in support of its Motion to Sever and Transfer Venue. Plaintiffs have failed to demonstrate why the separate and distinct claims asserted by the plaintiffs should not be severed into separate lawsuits, nor have Plaintiffs adequately explained why the Court should refrain from transferring the claims of Plaintiffs Rebecca Garza, Ruben Santillana, Minerva Santillana, Guillermo Contreras, Olga Contreras, Eluterio Morales, Rosa Morales, and Nora Garcia (collectively, "the Hidalgo Plaintiffs") to the appropriate venue where their homes that are the subject of this litigation are located – the McAllen Division of the Southern District of Texas. In support of this request for relief, Allstate would respectfully show the Court as follows:

# I.
## THE CLAIMS MUST BE SEVERED

1.  Under the guise of Rule 20(a) of the Federal Rule of Civil Procedure, Plaintiffs attempt to join six sets of families who own separate houses and have separate claims into one lawsuit. Neither Rule 20(a) nor the fundamental tenets of judicial efficiency and the right to a fair trial allows for joinder under these circumstances. Thus, the Court should sever the families into six separate suits having different cause numbers.

2.  Federal Rule of Civil Procedure 20(a) permits the permissive joinder of parties or claims when:

> they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action.

FED. R. CIV. P. 20(a) (2003). Thus, in order to justify the joinder of plaintiffs, there must be a showing that (1) the claims arise from a common transaction, occurrence, or series of transactions or occurrences, and (2) the claims share common issues of fact and law. *Demboski v. CSX Transp.*, 157 F.R.D. 28, 29 (S. D. Miss. 1994). It is clear from Plaintiffs' Response that they are unable to satisfy this test.

### A.  The Differences Among the Claims Far Outweigh Any Surface Similarities

3.  Plaintiffs' only bases for claiming proper joinder are that (1) the homeowners policies involved in Plaintiffs' claims were standard Form B policies, (2) the adjusters and their supervisors were located in Houston, Texas, and (3) the unsubstantiated allegation that Allstate engaged in "practices designed [to] avoid or minimize the payment of claims." However, none of these

2

arguments is sufficient to allow joinder in light of the numerous differences among Plaintiffs' claims that clearly indicate that there is no common theme among them.

4.   First, although each homeowners policy is a Form B policy, each differs in terms of policy periods, policy limits, and endorsements. Such differences affect whether or not Plaintiffs' claims fall within coverage periods or coverage exclusions. Therefore, the claim(s) presented to Allstate for each Plaintiff required different responses based on those policy differences.

5.   Second, the nature of the claims presented to Allstate differed greatly, again requiring different responses from Allstate. Some claims may have been covered losses, some may not. Allstate's response to each claim varies, therefore, depending on the nature of the loss and the date of loss. Plaintiffs' affidavits clearly illustrate the great variety in the losses Plaintiffs claim. For example, Michael Tellez asserts that he had approximately 13 water intrusions. (*See* Affidavit of Michael Tellez, ¶ B). Nora Garcia testified to four leaks. (*See* Affidavit of Nora Garcia, ¶ B). Olga Contreras testified to a single incident of pipes bursting. (*See* Affidavit of Olga Contreras, ¶ A). The only factor in common in these claims is that the losses involved water.

6.   Third, given the great variety in Plaintiffs' claims, it is not surprising that Allstate's response to each was different. For some claims, Allstate paid damages and the only dispute is whether or not sufficient damages were paid. On other claims, Allstate issued partial denials. For yet other claims, Allstate issued full denials. In addition, the type of claim presented affected whether additional living expenses ("ALE") benefits were available. For example, ALE benefits were paid to the Tellez family. (*See* Affidavit of Michael Tellez, ¶ C). However, no such benefits were paid to Nora Garcia, and Olga Contreras' affidavit does not mention ALE benefits at all. (*See* Affidavit of Nora Garcia, ¶ C, Affidavit of Olga Contreras). As the circumstances of each claim

varied, so did Allstate's response. While Plaintiffs argue that Allstate treated each of their claims according to some master-plan, the truth is that each claim was assessed and processed according to the specifics of the claim, the policy, and the coverage that applied.

7.     Finally, Plaintiffs have asserted no viable grounds for their claim that Allstate engaged in a practice of using ALE benefits to coerce Plaintiffs into accepting less for their claims than they were allegedly owed. In fact, as Plaintiffs' own affidavits show, ALE benefits were completely denied on some claims. If no ALE benefits were offered, then there can be no coercion using ALE benefits. (*See, e.g.,* Affidavits of Nora Garcia, Olga Contreras, Ruben Santillana, Eluterio Morales).

8.     In essence, Plaintiffs argue that Allstate maintains a corporate practice of denying some claims. Unless Plaintiffs wish to argue that an insurance company is obligated to pay all claims presented to it, regardless of whether coverage exists, such an assertion cannot support their position that Plaintiffs' claims arise from the same transaction, occurrence, or series of transactions or occurrences. Nor can Plaintiffs plausibly argue that common issues of fact or law are present in these claims sufficient to justify joinder. Plaintiffs' claims are improperly joined and should therefore be severed. *See Grayson v. K-Mart Corp.*, 849 F.Supp 785, 788-89 (N.D. Ga. 1994) (granting defendant's motion to sever in an age-discrimination case because the demotions of the eleven plaintiff managers in eleven different stores were discrete events that "hardly constitute a single action on the part of the defendant").

**B.     The Inevitable Confusion and Prejudice Created by Trying Six Distinct Cases Together Require That These Claims Be Severed.**

9.     Plaintiffs nonchalantly dismiss Allstate's legitimate arguments concerning the difficulty and confusion of trying these claims together by casually asserting that limiting instructions will be sufficient protection against any prejudice to Allstate. Nothing could be further from the truth. A simple reading of Plaintiffs' Original Complaint reveals clearly the difficulty the same jury will have in trying to assess six different sets of facts, six different time lines of claims processing, and the multitude of expert reports. This basic truth is reflected again by the varied and distinct facts laid out in Plaintiffs' affidavits attached to Plaintiffs' response to Allstate's motion to sever. How can a limiting instruction prevent the jury confusion that is inevitable under these circumstances? In fact, the Court in *Henderson v. AT&T Corp.*, found that a limiting instruction cannot be relied upon to prevent such confusion:

> Because a joint trial would make it extremely difficult for the jury to keep each Plaintiff's claim separate and require each Plaintiff to independently prove her case, the jury may simply resolve the confusion by considering all the testimony to pertain to all the claims, despite any limiting instruction.

918 F. Supp. 1059, 1063-64 (S.D. Tex. 1996) (finding a single trial of all plaintiffs' claims would create such confusion as to threaten the defendant's right to a fair trial).

10.     Neither can jury instructions resolve the practical difficulties presented by trying so many distinct cases together. Discovery will take longer. Pretrial motions will take longer. Most certainly, trial itself will take longer. There will be a host of fact witnesses testifying about different

losses and different damages.[1] There will also be hosts of experts offering opinions on the damages, if any, sustained by each residence. Every house will be different and will require separate experts or separate expert reports addressing the presence of water damage, mold, and the cost to remediate and repair the damages, if any. In the end, one jury will be faced with the impossible task of sorting through the mounds of evidence pertaining to each unique claim and assessing Allstate's responsibility, if any, to each of these Plaintiffs. The inherent practical difficulties of trying six cases together that share virtually nothing in common simply cannot be overcome by limiting instructions. Trying these claims together will create a logistical nightmare. *See Delce v. Amtrak and Resco Holdings, Inc.*, 180 F.R.D 316, 320 (E.D. Tex. 1998) (granting defendant's motion to sever because a single trial of the two plaintiffs' claims would be unwieldy and confusing to the jury because the claims involved two separate and unrelated incidents in different geographic locations, occurring at different times, and involving different employees of defendant).

11.     Further, limiting instructions cannot protect Allstate from the prejudice it almost certainly will suffer if these claims are tried together. For example, evidence that may be excluded for one set of Plaintiffs may nevertheless be heard by the same jury when presented for a different set of Plaintiffs. In addition, a jury may succumb to the cumulative effect of hearing these claims against Allstate. A jury could easily decide that if there are so many plaintiffs, surely the defendant must have done something wrong. It would be a rare juror indeed that would be able to keep completely separate the evidence on each set of Plaintiffs and judge each claim on its own merits,

---

[1] For example, in addition to the plaintiffs (all of whom would be expected to testify), there were different adjusters assigned to handle some or all of the claims reported by plaintiffs.

not influenced by evidence presented on other claims. The Court in *Grayson* recognized this very danger:

> It is precisely the need to focus the jury's attention on the merits of each individual plaintiff's case that counsels against proceeding with these cases in one consolidated trial. There is a tremendous danger that one or two plaintiffs' unique circumstances could bias the jury against defendant generally, thus, prejudicing defendant with respect to the other plaintiffs' claims.

*Grayson*, 849 F.Supp at 790. The only sure means of avoiding the confusion, the logistical difficulties, and the prejudice to Allstate is to sever these claims so that each may be heard and tried by its own jury.

## II.
## THE PROPER VENUE FOR THE HIDALGO PLAINTIFFS IS THE MCALLEN DIVISION

12. The houses of the Hidalgo Plaintiffs are located in Hidalgo County. Plaintiffs have admitted this much. Therefore, the appropriate venue to try those cases is the McAllen Division. Contrary to Plaintiffs' argument otherwise, Allstate presented sufficient argument to justify its request that the claims of the Hidalgo Plaintiffs be transferred to the McAllen Division of the Southern District of Texas. Plaintiffs cite no authority, much less Fifth Circuit authority, that mandates otherwise.

WHEREFORE, Defendant Allstate Texas Lloyds Company respectfully requests that the Court sever the claims of Plaintiffs Rebecca Garza, Ruben Santillana, Minerva Santillana, Guillermo Contreras, Olga Contreras, Eluterio Morales, Rosa Morales, and Nora Garcia; transfer these severed claims to the appropriate venue in the McAllen Division of the Southern District of Texas; and for such further relief to which Allstate may be justly entitled.

Respectfully submitted,

By: _____
Stephen H. Lee
State Bar No. 00791092
So. District Bar No. 18313

600 Travis Street, Suite 4700
Houston, Texas 77002
(713) 228-5100 (telephone)
(713) 228-6138 (facsimile)

**ATTORNEY-IN-CHARGE FOR DEFENDANT
ALLSTATE TEXAS LLOYDS COMPANY**

**OF COUNSEL:**
Ronald J. Restrepo
State Bar No. 16791300
So. District Bar No. 920
**DOYLE, RESTREPO, HARVIN & ROBBINS, L.L.P.**
600 Travis Street, Suite 4700
Houston, Texas 77002
(713) 228-5100 (telephone)
(713) 228-6138 (facsimile)

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been served upon counsel of record, *via* United States first class mail, on January 19, 2004:

Dan Downey
700 Louisiana Street, Suite 4000
Houston, Texas 77002
Facsimile: 713-222-0066

Peter E. Ferraro
1104 San Antonio Street
Austin, Texas 78701
Facsimile: 512-474-5306

John H. Eaton
Eaton & Associates
2208 Primrose, Bldg. D
McAllen, Texas 78504
Facsimile: 956-687-9867

_____
Stephen H. Lee