United States District Court
Southern District of Texas
FILED

NOV 15 2004

Michael N. Milby, Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| MICHAEL RICHARD TELLEZ, | § | |
| JENNIFER ANN TELLEZ, | § | |
| REBECCA GARZA | § | |
| RUBEN SANTILLANA, MINERVA | § | |
| SANTILLANA, GUILLERMO | § | |
| CONTRERAS, OLGA CONTRERAS, | § | |
| ELUTERIO MORALES, ROSA | § | |
| MORALES AND NORA GARCIA | § | |
| Plaintiffs, | § | CIVIL ACTION NO. B-03-218 |
| | § | |
| v. | § | |
| | § | |
| ALLSTATE TEXAS | § | |
| LLOYD'S COMPANY, | § | |
| | § | |
| Defendant. | § | |

## ALLSTATE TEXAS LLOYD'S COMPANY'S OPPOSED MOTION FOR SUMMARY JUDGMENT ON CLAIMS ASSERTED BY NORA GARCIA

Defendant Allstate Texas Lloyd's Company files this Motion for Summary Judgment and would respectfully show the Court that it is entitled to judgment as a matter of law based on the following:

### I.
### BACKGROUND

1. This is an insurance coverage dispute. Plaintiff was insured under a Texas Standard Homeowners' Form B Policy issued by Allstate. (*See* Exhibit "A"). On January 9, 2002 Ms. Garcia contacted Allstate to request that her home be tested for mold. A claim was opened for damages arising from an HVAC leak. On January 16, 2002, Allstate inspected Ms. Garcia's home and notes various areas of water damage. On February 8, 2002, Plaintiff asserted damages through a letter from her first attorney, Mr. Contreras, arising from multiple water leaks in her

home (Exhibit "B"). On June 25, 2003 and after multiple inspections of the residence, Allstate denied coverage for the HVAC leak for improper design and high humidity of the closet. (Exhibit "C"). In its denial letter, Allstate further explained that the kitchen sink leak, roof leak damage in the toy room, and downstairs bathroom damage were denied for untimely notice. Also, any damage associated with the missing drain plate ("escussion cover") in the downstairs hall bathtub is not a covered event. *See id.* In addition, Allstate sent another letter on November 4, 2003 to Ms. Garcia's new attorney, Mr. John Eaton, affirming the denial based on failure to mitigate and untimely notice. (Exhibit "D").

    2.    On November 28, 2003 Plaintiff filed suit for damages arising from "multiple water intrusions in various areas of her home . .." (Exhibit "E").

    3.    In support of this Motion, Allstate relies upon the following summary judgment evidence, attached and incorporated by reference:

    A.    Affidavit of C. Adams and Plaintiff's Policy;

    B.    Letter dated February 8, 2002 from Jesus Contreras to John Martin;

    C.    Letter dated June 25, 2002 to Ms. Garcia from Bobby Cathey;

    D.    Letter dated November 4, 2002 to John Eaton from David Meyers;

    E.    Plaintiffs' Original Complaint;

    F.    Affidavit of C. Adams and the Deposition of Nora Garcia; and

    G.    Affidavit of C. Adams and the Deposition of Ruben Morales.

Case 1:03-cv-00218   Document 29   Filed in TXSD on 11/17/2004   Page 3 of 17

## II.
## ARGUMENTS AND AUTHORITIES

A. **Summary Judgment evidence demonstrates that Plaintiff failed to comply with all conditions precedent to coverage under her homeowner's policy. Thus all assertions of coverage related to the HVAC leak, downstairs hall bathroom sink leak, kitchen sink leak, washing machine leak and upstairs toilet overflow are void under the policy.**

4. Plaintiff's homeowner's policy contains the following provisions under Section I - Conditions, subsection 3, "Duties After Loss:"

  a. Your duties after loss. In case of a loss to a covered property cause by a peril insured against, you must:

  a. Give **prompt** written notice to us of the facts relating to the claim.
  ...
  (3) (a) protect the property from further damage.
  (b) make reasonable and necessary repairs to protect the property.
  (c) keep an accurate record of repair expenses.
  ...[1]

5. It is well established in Texas that notice provisions requiring notice of an occurrence be given "*as soon as practicable*" or "*promptly*" are a condition precedent, the breach of which voids policy coverage. *See e.g., American Teachers Life Ins. Co. v. Brugette*, 728 S.W.2d 763 (Tex. 1987); *Rogers v. Aetna Casualty & Surety Co.*, 601 F.2d 840, 844 (5th Cir. 1979). The Texas Supreme Court has held that failure to perform the notice condition in a policy is an absolute defense to coverage even though the insurer had actual notice of an accident and was not prejudiced by lack of formal written notice. *Dairyland County Mut. Ins. Co. v. Roman*,

---

[1] *See* standard Texas Homeowners' Form-B Policy, attached as Exhibit "A"

3

498 S.W.2d 154, 157 (Tex. 1973); *see also Hirsch v. Texas Lawyers Ins. Exchange*, 808 S.W.2d 561 (Tex. App. – El Paso 1991, writ denied).

6. Generally, courts have interpreted insurance policy notice provisions to require that notice be given within a reasonable time after the occurrence. *See Stonewall Ins. Co. v. Modern Exploration, Inc.*, 757 S.W.2d 432, 435 (Tex. App. – Dallas 1988, no writ); *National Surety Corp. v. Diggs*, 272 S.W.2d 604, 607 (Tex. Civ. App. – Fort Worth 1954, writ ref'd n.r.e.); *State Farm County Mut. Ins. Co. v. Plunk*, 491 S.W.2d 728, 731 (Tex. App. – Dallas 1973, no writ). Addressing this issue, courts have held that notification of a loss more than **one month** after the occurrence is not reasonable as a matter of law, thus negating coverage under the insurance policy. *See e.g., Klein v. Century Lloyds*, 154 Tex. 160, 275 S.W.2d 95 (Tex. 1955) **(32 days unreasonable)**; *LeSage v. Utilities Ins. Co.*, 131 F.2d 536 (5th Cir. 1942) **(2 years unreasonable)**; *Flores v. Allstate Texas Lloyd's Co.*, 278 F. Supp. 2d 810, 820 (S.D. Tex. 2003)**(6 months unreasonable)**. In addition, Judge Hughes recently held in *Deshazor* that the insurer must be notified at the time of the event," not when secondary damage becomes apparent after the occurrence of a water event the insured had knowledge about, but failed to report. *Deshazor v. Allstate Texas Lloyds Ins.*, Civil Action No. H-04-468 (S.D. Tex. Aug. 31, 2004)(J. Hughes) (Opinion on Summary Judgment).

7. Furthermore, the *Flores* Court held that "notice of a mold claim may be considered unreasonable as a mater of law if the facts are undisputed and the notice is delayed and not excused." *Flores*, 278 F. Supp. 2d at 817. In the same memorandum opinion, the court stated

4

that a homeowner cannot sit back and watch mold grow in his home, or observe an obvious mold-instigating event and not notify his insurers." *Id.* at 816.

8. Should any of the "Duties After Loss" be construed as anything other than a condition precedent to coverage, "expressed and agreed-upon terms of the contract, i.e., the post-loss obligations, would be struck from the contract by way of judicial fiat and the bargained-for contractual terms would be rendered surplusage." *United States Guar. Co. v. Romay*, 744 So.2d at 471. The *Romay* court concluded, "There exists but one reasonable interpretation of the terms of the policy at issue here: The insured must comply with all of the policy's post-loss obligations. . . ." *Romay*, 744 So.2d 467, 471 (Fla. Dist. Ct. App. 1999)(en banc).[2] These Courts are consistent in their holding that "Duties After Loss" are conditions precedent to coverage under the policy and Plaintiff's failure to provide timely notice of water events in her home defeats coverage in this case.

A. *HVAC Leak*

9. Ms. Garcia's HVAC leak claim should be barred as a matter of law for untimely notice to Allstate. Ms. Gracia testified that this leak occurred before she was married in February of 2001. Nevertheless, this leak was not reported to Allstate until December 2001, at the earliest. (*See* Exhibit "B"). (Exhibit "F" pg. 87). Ms. Garcia testified that she noticed the leak because water was dripping on to the dining room carpet. (Exhibit "F" pg. 87). When she first noticed the leak, she called her husband who hired a contractor to examine the air conditioner. (Exhibit "F" pg. 88). Ms. Garcia testified that the unit was cleaned and fixed the same day. (Exhibit "F"

---

[2] In *Romay*, the insured sued to enforce a mandatory appraisal clause without fulfilling the post-loss obligation to produce a proof of loss. *Romay*, 744 So.2d at 471.

5

pg. 89). Even though notification was most likely delayed even longer, under summary judgment standards this claim was reported 10 months after it occurred. The *Flores* Court held that 6 months is untimely notice as a matter of law. *Flores v. Allstate Texas Lloyd's Co.*, 278 F. Supp. 2d 810, 820 (S.D. Tex. 2003). Therefore, the claim for the HVAC leak is untimely as a matter of law and summary judgment is appropriate.

  B. *Downstairs Hall Bathroom Sink Leak*

  10. Although Ms. Garcia experienced a leak underneath the downstairs hall bathroom sink, she waited approximately three years to report the claim. (Exhibit "F" pg. 65-67). Ms. Garcia testified that she accurately stated during a January 2002 inspection conducted by Allstate that this leak occurred approximately three years prior to that date. The January 2002 inspection occurred the same month that Ms. Garcia reported her claim. Therefore, according to her testimony, this water event occurred approximately three years prior to first being reported. (Exhibit "F" pg. 65-67). Ms. Garcia further testified in detail that she discovered the leak because the towels underneath the sink became wet. She also testified that either her husband or her brother conducted repairs that same day and there were no more leaks. (Exhibit "F" pg. 67). A three year delay in reporting a loss is untimely as a matter of law and also beyond the statute of limitations of two years and one day. Consequently, Allstate is entitled to summary judgment on the downstairs hall bathroom sink leak.

  C. *Kitchen Sink Leak*

  11. Ms. Garcia testified that she experienced a leak beneath the kitchen sink prior to February 2001, the month of her wedding. (Exhibit "F" pg. 73-74). She discovered the leak

when she found a wet bag of flour beneath the sink. She had her brother fix the leak. (Exhibit "F" pg. 74). This leak was not reported to Allstate until February 8, 2002 by way of a letter from Ms. Garcia's first attorney, Mr. Contreras. (Exhibit "B"). As a matter of law, the eleven month delay in reporting the kitchen sink water event is untimely and Allstate is entitled to summary judgment.

D.   *Washing Machine Leak*

12.   Ms. Garcia also testified that she experienced a washing machine leak in her utility room prior to February 2001, the month of her wedding. (Exhibit "F" pg. 82). She discovered the leak because water began spraying from the hose when she turned on the washing machine. (Exhibit "F" pg. 82). In response, she called her now husband, Mr. Morales, who instructed her to call a contractor. She hired All-In-One to make the repairs. (Exhibit "F" pg. 82). At that time, Ms. Garcia did not report the claim to Allstate. Based on summary judgment evidence, this event occurred sometime before Febraury 2001 and was not reported for at least ten months. Therefore, Allstate should be granted summary judgment on this event.

E.   *Upstairs Toilet Overflow*

13.   Ms. Garcia has also experienced a toilet overflow in the upstairs bathroom, which was addressed by her brother. Ms. Garcia established through testimony that she was clearly aware of this mold instigating event. (Exhibit "F" pg. 97). At her deposition on June 15, 2004, Ms. Garcia testified that the toilet overflow occurred four or five years prior to that date. (Exhibit "F" pg. 97). Consequently, under summary judgment standards, the date of the event is June, 2000. According to the letter from Ms. Garcia's first attorney, Mr. Contreras, Allstate was first

notified of this damage in December 2001. Although Allstate disputes that date of notice, the eighteen month delay in notifying Allstate is untimely. As such, summary judgment of the toilet overflow related damage should be granted in Allstate's favor.

> **B.    Any damage associated with the missing bathtub escussion cap in the hall downstairs bathroom is not afforded coverage under the policy of insurance.**

14.    The policy of insurance only provides coverage for accidental water leaks. (Exhibit A, pg. 6). Under Section I-Perils Insured Against, the policy provides coverage for "Accidental Discharge, Leakage or Overflow of Water or Steam from within a plumbing, heating or air conditioning system or household appliance." *Id.* No occurrence exists where the insured's conduct is intentional even if the resulting damage is unintentional, so long as the damage is of a type that ordinarily follows and could reasonably be anticipated to result from the conduct. *See Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 828 (Tex. 1997). In other words, an "accident" exists where the insured's conduct caused damage that is undesigned and unexpected, rather than damage reasonably anticipated from the conduct. *Id. (citing Massachusetts Bonding & Ins. Co. v. Orkin Exterminating Co.*, 416 S.W.2d 386, 400 (Tex. 1967)). "As one federal court applying Texas law noted, the paramount consideration for coverage purposes is whether the resulting damage was unexpected or unintended." *See First Texas Homes, Inc. v. Mid-Continent Casualty Co.*, 2001 WL 238112 (N.D.Tex. Mar. 7, 2001) (Sl. Op. at 3).

15.    There is no occurrence where there is voluntary and intentional conduct on the part of the insured and the damages could reasonably be anticipated to result from that conduct. *See Hartrick v. Great American Lloyds Ins. Co.*, 2000 WL 1159603 (Tex.App.–Houston [1st Dist.]

Aug. 17, 2000, no pet. history)(holding that there was no coverage because the damage was a reasonably foreseeable result of this intentional conduct. Sl. Op. at 5-6). The crux of the issue is whether the Plaintiff's conduct was intentional and, if so, whether the resulting damages were foreseeable.

16. In this case, both Ms. Garcia and Mr. Morales testified that the escussion cover of the downstairs bathtub is missing. (Exhibit "F" pg. 70)(Exhibit "G" pg. 42-43). In particular, Ms. Garcia testified that it has been missing since she initially moved into the house in 1993. (Exhibit "F" pg. 70-71). Instead of hiring a plumber to replace the cap or make some other type of industry repair, Ms. Garcia attempted to repair the hole with plastic wrap and ducktape. (Exhibit "F" pg. 70-71).

17. The HO-B policy does not cover events which were a direct result of intentional actions taken by the homeowner when the results of the actions are foreseeable. Certainly, the use of plastic wrap and duck tape, instead of a proper escussion cap, is not a reasonable long term repair. Although the exact consequences of Ms. Garcia's actions were probably not intended, it is highly foreseeable that some damage would occur as a result of using palstic wrap and ducktape as a long term remedy for a missing escussion cap. Consequently, any damage associated with this event is not covered under the policy and summary judgment is appropriate regarding the downstairs hall bathtub.

**C.    Plaintiff's claims for the water heater roof leak are barred because she has completely failed to mitigate the damages, if any, to her residence.**

18. Plaintiffs also have the obligation and duty under the policy to protect the property from any damages that may result from a loss and to make reasonable and necessary repairs to

9

protect the property before making, and during the pendency of, a claim. (Exhibit A, at page 9, SECTION I - CONDITIONS, (3) Duties After Loss). Other such conditions listed in the "Duties After Loss" section have been specifically identified as conditions precedent to coverage by Texas courts. *See Brugette*, 728 S.W.2d at 764 (proof of loss and notice of claim); *Glens Falls Ins. Co.*, 484 S.W.2d at 574 (notice of claim); *Rogers*, 601 F.2d at 844 (proof of loss); *Hagler*, 532 at 137 (notice of claim and proof of loss); *Dairyland*, 498 S.W.2d at 157 (notice of claim); *Hirsch*, 808 S.W.2d at 565 (notice of claim); *Stonewall Ins.*, 757 S.W.2d at 435 (notice of claim); *Diggs*, 272 S.W.2d at 607 (notice of claim); *Plunk*, 491 S.W.2d 731 (notice of claim); *Perrotta v. Farmers Ins. Exch.*, 47 S.W.3d 569, 573-574 (Tex.App.–Houston [1st Dist.] 2001, no pet. history) (requirement for examination under oath); *Philadelphia Underwriters' Agency of Fire Ins. Ass'n v. Driggers*, 111 Tex. 392, 238 S.W. 633, 635 (1922) (requirement for examination under oath); *State Farm Gen. Ins. Co. v. Lawlis*, 773 S.W.2d 948, 949 (Tex.App.-- Beaumont 1989, no writ) (requirement for examination under oath).

19.  Courts in other jurisdictions have specifically held that all of the post-loss obligations set forth in an insurance policy are conditions precedent to coverage under the policy. *Hill v. Safeco Ins. Co. of Am.*, 93 F.Supp.2d 1375, 1379 (M.D. Georgia 1999) ("such clauses are conditions precedent to recovery and are binding against the insured"); *United States Fid. & Guar. Co. v. Romay*, 744 So.2d 467, 470-471 (Fla.Dist.Ct.App. 1999) (en banc); *Galindo v. ARI Mut. Ins. Co.*, 203 F.3d 771, 775-776 (11th Cir. 2000); *Buffalo Ins. Co. v. Star Photo Finishing Co.*, 120 Ga.App. 697, 708, 172 S.E.2d 159, 166-167. Identical language to that contained in the applicable Allstate policy regarding the duty to protect the property was also specifically held

10

to be among the provisions the *Romay* and *Galindo* courts recognized as conditions precedent to recovery under the policies at issue in those cases. *Romay*, 744 So.2d at 470; *Galindo*, 203 F.3d at 775.

20. "These obligations are not unduly burdensome or arbitrary and constitute assurance that the insurer will be provided with adequate information on which to base its conclusion." *Romay*, 744 So.2d at 471. The purpose of these post-loss obligations is to "provide the insurer with an independent means by which to determine the amount of the loss, as opposed to relying solely on the representations of the insured." *Romay*, 744 So.2d at 47, n.4. This concern is specifically pertinent to the duty to protect the property after a loss, because without the benefit of this condition precedent, the insurer is left to rely on the representations of the insured as to how much of the damage is attributable to a covered occurrence as opposed to the failure of the insured to protect the property after the loss is discovered.

F. *Water Heater Leak*

21. Ms. Garcia testified that there was a water heater leak in her utility room approximately six years prior to the date of her deposition. (Exhibit "F" pg. 77). Although she does not know the cause of the leak, she testified that her husband replaced the unit himself. (Exhibit "F" pg. 78). Mr. Morales testified that at the time of the event the entire wall surrounding the water heater was wet from the leak. (Exhibit "G" pg. 53). He further testified that approximately one month later they noticed mold or mildew on the walls of the utility room. (Exhibit "G" pg. 56). After noticing the mold or mildew on the walls, Ms. Garcia attempted to sweep it off with a broom. (Exhibit "F" pg. 80) Because Ms. Garcia was aware of the damage

11

to this area and failed to take steps to prevent additional damage or make adequate repairs, Plaintiff has failed to mitigate her damages as a matter of law. Therefore, Allstate is entitled to summary judgment on these claims.

    G.    *Roof Leak*

22.    Ms. Garcia testified that she experienced a roof leak in 1994. (Exhibit "F" pg. 56). She further testified that Allstate issued payment on this claim and paid to completely replace the roof. (Exhibit "F" pg. 56). In addition, she testified that she was happy with the way Allstate handled this claim and the roof was replaced. (Exhibit "F" pg. 56). However, soon after the roof had been replaced she experienced a leak in the toy room on the downstairs level of the house. (Exhibit "F" pg. 57). She contacted the contractor who installed the roof who determined there was nothing was wrong. (Exhibit "F" pg. 58). Both Ms. Garcia and Mr. Morales testified that several small leaks occurred a couple of occasions and then stopped. (Exhibit "F" pg. 58)(Exhibit "G" pg. 33-36). Since then, they have not experienced any additional roof leaks, nor have they conducted any further investigations to determine the cause of the small leaks in this room. (Exhibit "F" pg. 58)(Exhibit "G" pg. 35-36). As such, Plaintiff has failed to mitigate her damages as required under the contract of insurance. Therefore, Allstate is entitled to summary judgment on any claims Plaintiff may have regarding her roof leak.

23.    Additionally, since moving into a new home, Plaintiff has failed to maintain the property. In particular, the water and electricity to the residence were terminated for extended periods of time. (Exhibit "F" pg. 30-31). Furthermore, the house has been burglarized at least one time.(Exhibit "G" pg. 107). In addition, Mr. Morales has testified that the house is

deteriorating. (Exhibit "G" pg. 131-132). He described the exterior of the house as appearing very deteriorated. (Exhibit "G" pg. 131-132). Since the home was essenatially abandoned, the inside is very dirty and also in bad shape. In other words, Plaintiff has failed to mitigate her damages and has, in fact, most likely increased any damages and repairs costs. Consequently, Plaintiff has breached her duty to mitigate the damages under the contract of insurance and Allstate is entitled to summary judgment. (Exhibit "A" pg. 9).

> **D.   Ms. Garcia's claim for damages resulting from the roof leak are also barred by the Statute of Limitations.**

24.   Pursuant to the policy, Plaintiffs' claim for damages arising from a leak behind the hall bathroom vanity is barred as a matter of law because the Ms. Garcia failed to bring her claim for damages associated with the roof within the two year and one day statute of limitations period specified under the policy. (Exhibit A, pg. 13). Section I-Conditions: (11) "Suit Against Us" specifies that an "[a]ction brought against us must be started within two years and one day after the cause of action accrues." *Id.* Furthermore, courts have upheld the validity of these provisions. *See Holston v. Implement Dealers Mut. Fire Ins. Co.*, 806 F.2d 682 (5th Cir. 1953); *Ehrig v. Germania Farm Mut. Ins. Assoc.*, 84 S.W.3d 320 (Tex. App. –Corpus Christi 2002).

25.   Under summary judgment standards, Plaintiff waited more than two years and one day from the time of this occurrence until they brought an action against Allstate. Ms. Garcia testified that the roof leak occurred in 1994, and Allstate paid to replace the roof. (Exhibit "F" pg. 51). Even when reviewing the evidence in the light most favorable to the non-moving party, this claim is barred as a matter of law because the Plaintiff waited more than two years and one day from the day of the alleged breach to bring her action.

13

26.     Texas Courts have held that the statute of limitations begins to run "when facts come into existence that authorize a claimant to seek a judicial remedy." *Ehrig v. Germania Farm Mut. Ins. Assoc.*, 84 S.W.3d 320, 323 (Tex. App. – Corpus Christi 2002). Courts have determined that a denial or closing of a claim triggers the beginning of the limitations period. *Id.* at 324. The Court reasoned that closing of a claim file is an "objectively verifiable event that unambiguously demonstrated [the insurer's] intent not to pay the claim, even if the fact of injury was not discovered until later." *Kuzniar v. State Farm Lloyds*, 52 S.W.3d 759, 760 (Tex. App.–San Antonio 2001).

27.     When the roof began leaking immediately after it was replaced, Allstate informed Ms. Garcia that she should speak with the contractor about the additional roof leaks. (Exhibit "F" pg. 57-58). At that time, Ms. Garcia was on notice of sufficient facts to seek additional remedies, yet she chose not to. Under summary judgment standards, the claim is still barred by the statute of limitations because the triggering event, the issuance of payment or instruction to seek help from the contractor, occurred when Allstate paid the claim in 1994 or in 1995 at the latest. (Exhibit "F" pg. 57-58). Consequently, the claim is barred as a matter of law.

## III.
### CONCLUSION

28.     For the above stated reasons, Allstate respectfully submits that it is entitled to judgment as a matter of law on each of Plaintiffs' identified claims.

WHEREFORE, Defendant Allstate Texas Lloyd's Company respectfully prays that the Court grant its Motion for Summary Judgment in its entirety and for such other and further relief to which Allstate is justly entitled.

                              Respectfully submitted,

                              By: _____ *with permission*
                                  Ronald J. Restrepo
                                  State Bar No. 16791300
                                  So. District Bar No. 920
                                  **DOYLE, RESTREPO, HARVIN & ROBBINS, L.L.P.**
                              600 Travis Street, Suite 4700
                              Houston, Texas 77002
                              (713) 228-5100 (telephone)
                              (713) 228-6138 (facsimile)

                              ATTORNEY-IN-CHARGE FOR DEFENDANTS

**OF COUNSEL:**
Rene O. Oliveira
State Bar No. 15254700
So. District Bar No. 4033
**ROERIG, OLIVEIRA & FISHER, L.L.P.**
855 West Price Road, Suite 9
Brownsville, Texas 78520-8718
Telephone:    (956) 542-5666
Facsimile:     (956) 542-0016

Conrad E. Adams
State Bar No. 24036107
So. District Bar No. 21256
**DOYLE, RESTREPO, HARVIN & ROBBINS, L.L.P.**
600 Travis Street, Suite 4700
Houston, Texas 77002
(713) 228-5100 (telephone)
(713) 228-6138 (facsimile)

## CERTIFICATE OF CONFERENCE

I certify that Allstate's counsel conferred with the Plaintiff's Attorney-in-Charge by phone on November 11, 2004 and that Plaintiff's counsel responded that he is opposed to this motion. Therefore, this motion is presented to the Court for determination.

_Conrad E. Adams with permission_
Conrad E. Adams

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was served upon the following counsel of record by United States first class mail, with postage prepaid thereon on this 15 day of November, 2004:

Dan Downey
The Gallagher Law Firm
700 Louisiana, Suite 4000
Houston, Texas 77002

Peter E. Ferraro
1104 San Antonio Street
Austin, Texas 78701

John H. Eaton
Eaton & Associates
2208 Primrose, Bldg. D
McAllen, Texas 78504

_Conrad E. Adams with permission_
Conrad E. Adams